[No. 1433.]

R. A. HOUSTON *v.* THE STATE.

1. STOCK LAW.—INDICTMENT for purchasing cattle without a bill of sale in its charging part alleges that the defendant " did then and there unlawfully and wilfully purchase from Willis Arrington certain animals, to-wit, two hundred and seven head of cattle, without obtaining therefor a bill of sale from the owner or agent of said cattle; contrary," etc. *Held* insufficient because it fails to allege in any one the ownership of the cattle.
2. SAME—PLEADING.—The constituent elements of an offense should be charged by direct, positive and certain averments, and not by inference.
3. SAME—EVIDENCE.—It being in evidence that the cattle were purchased and received by an agent for his principal, it was not only necessary, in order to sustain a conviction against the principal for an illegal purchase, to show that the agent purchased and received the animals under his direction, but by his direction did so purchase and receive them without taking a bill of sale therefor. See the opinion *in extenso* on the question.
4. SAME—STATUTE CONSTRUED.—Article 779 of the Penal Code, requiring the purchaser of cattle to obtain a bill of sale therefor, must be construed to require the execution of the bill of sale at the time of the delivery of the cattle.

APPEAL from the County Court of Gonzales. Tried below before the Hon. J. S. Conway, County Judge.

The indictment charges the appellant with the purchase of two hundred and seven head of cattle from Willis Arrington without having obtained a bill of sale therefor. The penalty imposed by a verdict of guilty was a fine of fifty dollars per head, aggregating the sum of ten thousand three hundred and fifty dollars.

The brief for the appellant, embodied in this report, in so far as it treats of the questions discussed in the opinion, presents a correct summary of the evidence adduced on the trial.

*Fly & Davidson,* for the appellant. The defendant filed his motion to quash the information, which the court overruled. By the statement of facts it is shown that the defendant, on February 22, 1882, admitted, as did also Arrington, that defendant bought two hundred and seven head of cattle from said Arrington without a bill of sale. Several witnesses said they recognized, on said February 22, eighteen head of cattle, said by Houston to be of the two hundred and seven head in Floyd's pasture, where he had about one thousand five hundred head of cattle gathered for his Kansas drive; also, including this eighteen head, he had about one hundred or one hundred and fifty that Houston said he bought of Arrington.

It was also testified that Houston bought of Terry, Kelley and Phillips a lot of cattle on February 9 or 10, 1882, and that J. W. Jeffries, on February 15, 1882, bought, received and paid for, through G. N. Dilworth, the bunch or lot of cattle of Arrington, which defendant Houston is charged to have bought of Arrington, Houston being in Austin city, and that he returned therefrom on February 18, 1882. By witnesses G. Baker and Tom Baker, and other testimony, it appears that this was the only lot of cattle bought of Arrington prior to June, 1882, that went into Houston's herds or into his possession, and this lot was variously estimated from one hundred to two hundred head in number, and that Jeffries put these cattle into the Floyd pasture. It further appears from the record that the inspector of Gonzales county inspected the two herds from the Floyd pasture on March 1 and 17, 1882, at which time he took bills of sale for all cattle in said pasture, and that these two herds left Gonzales county after said inspection, and that these cattle spoken of went off in said herds, except seven head proven away by Lord and others. The defendant offered the records of Gonzales county containing the recording of these inspections by the county inspector, which was promptly ruled out by the court. The defendant then offered to prove the custom among stockmen in getting up these herds of cattle that are driven to market from the county, and the custom as to what is a delivery among stockmen in such matters, and what it takes to constitute a sale and delivery in such transactions among these men in this particular branch of business. One of the eighteen head identified was not claimed by Houston or Arrington, and had the brand of neither of them on it. The testimony of record was ruled out, as was the proposed testimony as to

the custom of stockmen. It also appears from the testimony that this lot of cattle bought by Jeffries of Arrington is the only cattle that went into Houston's herds that came through Arrington to Houston. Defendant also filed exceptions to the court's charge, as shown by bills of exception, and asked further instructions, a part of which were given and a part refused; to which defendant excepted. The defendant filed his motion in arrest of judgment and motion and amended motion for new trial, which were overruled by the court, and exceptions filed, and defendant appealed from the judgment of the court.

We insist that the information must charge definitely the offense under the statute, and defendant must be notified of what he is to answer.

The information charges defendant with having purchased of Willis Arrington without obtaining a bill of sale therefor from the owner or agent, and does not allege the owner or agent. (Code Crim. Proc., Arts. 421 and 432; 7 Texas Ct. App., 608; 10 Texas, 300; 21 Texas, 757; 8 Texas Ct. App., 127.)

The information must be certain and explicit, and distinctly set out the statutory offense. The information does not allege Arrington to be the owner or agent, or who the owner or agent is. (Same authorities.)

The information charges no offense, inasmuch as it does not charge that Houston failed to take a bill of sale from Arrington, nor that Houston knew Arrington was not the owner nor agent of the owner. (5 Texas Ct. App., 248; 6 Texas Ct. App., 612; Id., 642; 8 Texas Ct. App., 466.)

The information should have alleged who was the owner or agent of owner, and if this was not known to the pleader, that fact should have been alleged. (6 Texas Ct. App., 238; 8 Texas Ct. App., 540.)

A failure to take a bill of sale at the time of actual delivery is not from that fact alone a violation of the law if the bill of sale is taken before prosecution is commenced. The court charged the jury that "actual delivery should be accompanied by a written transfer," which was error. (Subdivision four of charge, Trans., p. 21, and statement of facts, Trans., p. 9.) The bill of sale at actual delivery is not necessary. (Code Crim. Proc., Art. 779.)

The testimony of the two Bakers and G. N. Dilworth shows that Jeffries bought, received and paid for the cattle, and Houston was in Austin. The State shows nothing but what Houston

said about it when a crowd of armed men had invaded Houston's herd.   (11 Texas Ct. App., 132.)

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, J.   Houston was convicted of purchasing two hundred and seven head of cattle from Willis Arrington, without obtaining therefor a bill of sale from the owner; the fine imposed being ten thousand three hundred and fifty dollars.

It is alleged in the charging portion of the information that Houston "did then and there unlawfully and willfully purchase from Willis Arrington certain animals, to-wit, two hundred and seven head of cattle, without obtaining therefor a bill of sale from the owner or agent of said cattle; contrary," etc. Motions to quash and in arrest were made and overruled.

It is insisted by counsel for appellant that the information is insufficient because Arrington is not alleged to be the owner of the cattle purchased, and because the information does not charge property in any person.   Unless Arrington is alleged to be the owner of the cattle, the information fails to name the owner, and is for that reason fatally defective.   Does the information charge Arrington to be the owner of the cattle?   Most evidently it does not.   Suppose Arrington had stolen the cattle, he would neither have been the owner nor the agent of the owner.   Let us further suppose that Houston purchased from Arrington, and obtained a bill of sale to the cattle from him; every word, each and every allegation contained in the information would be true, but who would assert the guilt of Houston? It must appear upon the face of the indictment or information, and from no other source, that, if true, the person therein accused is guilty of the offense charged.   The guilt of the accused is thus made to appear by direct and positive allegations of every fact constituting the offense.   This must not be done by argument or inference, but by direct, positive and certain averments.   (*Bush* v. *The Republic*, 1 Texas, 455; *Moore* v. *The State*, 7 Texas Ct. App., 608.)

Though the judgment must be reversed and the prosecution dismissed, we nevertheless deem it proper and necessary for us to make some observation upon two other subjects presented by the record.

There being evidence strongly tending to prove that Houston was at Austin at the time the cattle were delivered to Jeffries,

his agent, defendant by his counsel requested the court to charge the jury as follows: "If the jury believe from the evidence that Houston was absent from the county at the time of the delivery of the cattle, and that said cattle were delivered without his advice or consent, without a bill of sale being given, they will acquit the defendant." This charge the court refused, and a bill was reserved.

The Assistant Attorney General insists that as the offense charged and that for which defendant is convicted is a misdemeanor, and as there are no accessories to misdemeanors, but all are principals, the action of the court was correct. While it may be true that in misdemeanors all are principals, it does not result that Houston would be criminally responsible for the acts of his agent Jeffries, unless he had authorized him to purchase and receive the cattle without a bill of sale. What is the rule upon this subject? Mr. Bishop, in his work on Procedure, states it very concisely.

He says: "One who does a thing on procurement of another is in civil jurisprudence termed the agent, and the procurer the principal. But, in the criminal law, agency never excuses an act; therefore the agent is known and holden as principal equally with him who proceeds self-moved. The *procurer is a principal also* if the thing is treason, petit larceny or *misdemeanor*." (Italics ours.) The procurer is a principal. To be held such, what must he procure? Evidently the commission of the acts and omission constituting the offense. That he procured Jeffries to purchase and receive the cattle may be conceded, but he would not be criminally responsible. These acts alone, to-wit, the purchase and reception of the cattle, do not constitute the offense, the failure to take a bill of sale to the cattle being the gist of the offense. To hold him thus responsible, it must be shown, proven, that he procured or authorized Jeffries not only to purchase and receive the cattle, but to do so *without receiving a bill of sale.*

In felonies, to be a principal at common law, the party must not only be present, but be the actual perpetrator of the crime. Under our code, he must be present or keeping watch; or, if not actually present, he must act together with those actually engaged in the commission of the offense. In misdemeanors this distinction does not obtain, but if he advised others, or acts through an agent, whether present or not, or whether acting with those actually engaged in the commission of the offense or

not, he is a principal, and can be prosecuted and convicted as such. But he must procure his agent, or advise others to do or not to do the acts which constitute the offense, or which may reasonably result in the commission of an offense.

The court charged the jury that "a failure to secure a written transfer, or bill of sale, at the actual delivery of the cattle, would be in violation of law." Did this charge contain the correct construction of Article 779 of the Penal Code? Said article reads as follows: "Any person who shall purchase any animals or hides of cattle without obtaining a bill of sale from the owner or his agent, shall be fined," etc. The question: At what time must the bill of sale be obtained? 1, it is argued by counsel for defendant, that if the herd is to be driven from the county to market, it is sufficient if the bill of sale is obtained before the herd leaves the county; 2, that if the bill of sale is obtained before prosecution is commenced, this will suffice, though not taken upon actual delivery.

Article 779, though not as explicit as it could have been made, evidently was intended to require the bill of sale to accompany the delivery of the cattle. Any other construction of the statute would defeat the purpose of the law, which was evidently intended to protect owers of stock from illegal transactions therein by clandestine removals of the same from their accustomed range, and out of constructive possession of their rightful owners, under the guise of mythical sales or pretended transfers, made to avoid the penalty of the offense in case of detection.

We have thought it proper and necessary to make the above observations upon these two subjects, to the end that, in the event of other prosecutions, the court below may be governed by the principle herein stated. We have not discussed all of the points presented in the record, because we are not certain that they will arise in another prosecution.

The information being insufficient, the judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*

Opinion delivered March 17, 1883.